# UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF OKLAHOMA

MICHAEL SHEFFIELD ROCKHOLT, )
)
    Plaintiff, )
)
v. ) Case No. CIV-17-578-G
)
NANCY A. BERRYHILL, Acting )
Commissioner of Social Security, )
)
    Defendant. )

## OPINION AND ORDER

Plaintiff Michael Sheffield Rockholt brings this action pursuant to 42 U.S.C. § 405(g) for judicial review of the final decision of the Commissioner of the Social Security Administration ("SSA") denying Plaintiff's application for disability insurance benefits ("DIB") under Title II of the Social Security Act, 42 U.S.C. §§ 401-434, and for supplemental security income ("SSI") under Title XVI of the Social Security Act, *id.* §§ 1381-1383f. Upon review of the administrative record (Doc. No. 14, hereinafter "R. \_"),[1] and the arguments and authorities submitted by the parties, the Court affirms the Commissioner's decision.

PROCEDURAL HISTORY AND ADMINISTRATIVE DECISION

Plaintiff protectively filed his DIB and SSI applications on April 10, 2015, alleging disability beginning April 8, 2015. R. 20, 189-97. Following denial of Plaintiff's applications initially and on reconsideration, an Administrative Law Judge ("ALJ") held a

---

[1] With the exception of the administrative record, references to the parties' filings use the page numbers assigned by the Court's electronic filing system.

hearing on September 13, 2016. R. 20, 34-62, 115-23, 126-31. The ALJ issued an unfavorable decision on December 13, 2016. R. 17-33.

The Commissioner uses a five-step sequential evaluation process to determine entitlement to disability benefits. *See Wall v. Astrue*, 561 F.3d 1048, 1052 (10th Cir. 2009); 20 C.F.R. §§ 404.1520, 416.920. At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since April 8, 2015, the alleged disability-onset date. R. 22. At step two, the ALJ determined that Plaintiff had the severe impairments of diabetes mellitus, shoulder tendinopathy, and diabetic foot ulcers. R. 22-24. At step three, the ALJ found that Plaintiff's condition did not meet or equal any of the presumptively disabling impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. R. 24.

The ALJ next assessed Plaintiff's residual functional capacity ("RFC") based on all of his medically determinable impairments. R. 24-27. The ALJ found that Plaintiff had the RFC to perform less than the full range of light work, subject to the following limitations: "[Plaintiff] can lift, carry, push, and pull 20 pounds occasionally. He can sit for a total of six hours a day. He can stand and/or walk in increments of up to four hours." R. 24. At step four, the ALJ found that Plaintiff was unable to perform any past relevant work. R. 27.

At step five, the ALJ considered whether there are jobs existing in significant numbers in the national economy that Plaintiff—in view of his age, education, work experience, and RFC—could perform. R. 27-28. Taking into consideration the hearing testimony of a vocational expert ("VE") regarding the degree of erosion to the unskilled light occupational base that is caused by Plaintiff's additional limitations, the ALJ

concluded that Plaintiff could perform occupations such as small-products assembler, electrical-accessory assembler, and inspector packer, all of which offer jobs that exist in significant numbers in the national economy.  R. 28.  On this basis, the ALJ concluded that Plaintiff had not been under a disability, as defined in the Social Security Act, from April 8, 2015, through the date of the decision.  R. 28.  Plaintiff's request for review by the Appeals Council was denied, and the unfavorable determination of the ALJ stands as the Commissioner's final decision.  R. 1-6; *see* 20 C.F.R. §§ 404.981, 416.1481.

STANDARD OF REVIEW

Judicial review of the Commissioner's final decision is limited to determining whether factual findings are supported by substantial evidence in the record as a whole and whether correct legal standards were applied.  *Poppa v. Astrue*, 569 F.3d 1167, 1169 (10th Cir. 2009).  "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Doyal v. Barnhart*, 331 F.3d 758, 760 (10th Cir. 2003) (internal quotation marks omitted).  "A decision is not based on substantial evidence if it is overwhelmed by other evidence in the record or if there is a mere scintilla of evidence supporting it."  *Branum v. Barnhart*, 385 F.3d 1268, 1270 (10th Cir. 2004) (internal quotation marks omitted).  The court "meticulously examine[s] the record as a whole," including any evidence "that may undercut or detract from the ALJ's findings," "to determine if the substantiality test has been met."  *Wall*, 561 F.3d at 1052 (internal quotation marks omitted).  While a reviewing court considers whether the Commissioner followed applicable rules of law in weighing particular types of evidence in disability

cases, the court does not reweigh the evidence or substitute its own judgment for that of the Commissioner. *Bowman v. Astrue*, 511 F.3d 1270, 1272 (10th Cir. 2008).

ANALYSIS

In his request for judicial review, Plaintiff challenges the ALJ's (1) evaluation of the treating-source opinion of Esther Walker, DO; (2) failure to solicit additional evidence regarding an alleged "ambiguity/deficiency/insufficiency" in Dr. Walker's opinion; (3) failure to consider Plaintiff's work history in assessing Plaintiff's subjective complaints; and (4) failure to address Plaintiff's posthearing objections to the VE's testimony. *See* Pl.'s Am. Br. (Doc. No. 17) at 5-21.

I. THE ALJ'S ASSESSMENT OF DR. WALKER'S MEDICAL OPINION

   A. *The Treating-Physician Rule*

By regulation, a treating source's medical opinion generally is given "more weight" than that of a nontreating source. 20 C.F.R. §§ 404.1527(a)(2), (c)(2), 416.927(a)(2), (c)(2); *Langley v. Barnhart*, 373 F.3d 1116, 1119 (10th Cir. 2004). Under Tenth Circuit authority, the evaluation of a treating physician's opinion follows a two-step procedure. *Watkins v. Barnhart*, 350 F.3d 1297, 1300 (10th Cir. 2003). First, the ALJ must determine whether the treating physician's opinion should be given "controlling weight" on the matter to which it relates. *See id.*; 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2). The medical opinion of a treating physician must be given controlling weight if it is both "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and "not inconsistent with the other substantial evidence" in the record. 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2); *Watkins*, 350 F.3d at 1300 (applying SSR 96-2p, 1996 WL

374188, at *2 (July 2, 1996)). Second, if the ALJ has determined that the medical opinion of a treating physician is not entitled to controlling weight, the ALJ must determine what lesser weight should be afforded the opinion. *See Watkins*, 350 F.3d at 1300-01; *Langley*, 373 F.3d at 1119. The determination of how much deference to afford a treating physician opinion not entitled to controlling weight should be made in view of a prescribed set of regulatory factors:

> (1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (3) the degree to which the physician's opinion is supported by relevant evidence; (4) consistency between the opinion and the record as a whole; (5) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (6) other factors brought to the ALJ's attention which tend to support or contradict the opinion.

*Watkins*, 350 F.3d at 1301 (internal quotation marks omitted); 20 C.F.R. §§ 404.1527(c)(2)-(6), 416.927(c)(2)-(6).

The ALJ's decision "'must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight.'" *Watkins*, 350 F.3d at 1300 (quoting SSR 96-2p, 1996 WL 374188, at *5).

## B. *The Medical Record and the Written Decision*

Dr. Walker completed a Treating Source Statement on September 1, 2016.[2] R. 1084-88 (Ex. 13F). In her Statement, Dr. Walker noted that Plaintiff was markedly limited

---

[2] The Treating Source Statement form completed by Dr. Walker was for psychological rather than physical conditions. Consequently, Dr. Walker left several sections blank, noting that the questions did not relate to her area of practice. R. 1084, 1085, 1087, 1088.

5

in activities of daily living and moderately limited in maintaining social functioning, and she opined that Plaintiff cannot walk for "greater than 20 ft. at a time [without] damage to his [foot] tissue." R. 1086. Dr. Walker also assessed that Plaintiff's foot-related symptoms are likely severe enough to interfere over 25% of the time with the attention and concentration needed to perform even simple work-related tasks. R. 1088. Dr. Walker also found that Plaintiff's impairments would likely result in his absence from work more than four days per month. R. 1088.

> The ALJ discussed Dr. Walker's opinion in his written decision:
>
> The record contains a medical source statement from Esther Walker, D.O. dated September 1, 2016 (Exhibit 13F). She stated she has treated the claimant since January 2014, for wound care. She opined that the claimant cannot walk for greater than 20 feet at a time without danger to his tissue. Dr. Walker also opined that the claimant is likely to be absent from work due to his impairments more than four days per month. The [ALJ] has given Dr. Walker's opinions little weight. They are inconsistent with the other treating records. The undersigned notes that the limitations described by Dr. Walker are more extreme than the objective findings in the treating notes contained in Exhibit 12F. The claimant himself admitted his diabetic control has recently improved and this coincides with his compliance with diet. Further, while Dr. Walker and the claimant allege that he cannot walk greater than 20 feet at one time, they do not comment as to how much the claimant can stand or walk during a workday. The undersigned finds that the restrictions in the above residual functional capacity would accommodate the claimant's diabetic foot ulcer limitations.

R. 26.

---

The ALJ discussed the discrepancy during the hearing but did not address it in his written decision. *See* R. 40.

6

*C. Whether the ALJ's Evaluation of Dr. Walker's Opinion Complied with the Treating-Physician Rule*

Plaintiff challenges the ALJ's application of the treating-physician rule to Dr. Walker's opinion, contending both that the ALJ failed to consider certain factors set forth in 20 C.F.R. §§ 404.1527(c)(2)-(6), 416.927(c)(2)-(6) and that the ALJ's stated reasons for not fully crediting Dr. Walker's opinion were not supported by the record. *See* Pl.'s Am. Br. at 12-19. The Court finds no error in the ALJ's analysis.

According to Plaintiff, the ALJ "failed to acknowledge the fact that Dr. Walker actually examined and treated Plaintiff, or [her] specialty in emergency medicine." *Id.* at 14 (citing 20 C.F.R. § 404.1527(c)(1), (2), (5)); *see also* 20 C.F.R. § 416.927(c)(1), (2), (5). Contrary to the first assertion, the ALJ explicitly stated that Dr. Walker had "treated the claimant since January 2014, for wound care." R. 26. As to the second assertion, that the ALJ should have noted a specialty in emergency medicine, the omission does not constitute legal error, as "[t]he ALJ is not required to mechanically apply all of [the regulatory] factors in a given case." *Ringgold v. Colvin*, 644 F. App'x 841, 843 (10th Cir. 2016); *see Oldham v. Astrue*, 509 F.3d 1254, 1258 (10th Cir. 2007) ("That the ALJ did not explicitly discuss all the § 404.1527[(c)] factors for each of the medical opinions before him does not prevent this court from according his decision meaningful review. [Claimant] cites no law, and we have found none, requiring an ALJ's decision to apply expressly each of the six relevant factors in deciding what weight to give a medical opinion.").

Plaintiff next challenges the ALJ's finding that Dr. Walker's medical opinion was "inconsistent with the other treating records" and "more extreme than the objective findings in the treating notes contained in Exhibit 12F." R. 26; *see* Pl.'s Am. Br. at 15-17.

7

The ALJ properly considered the inconsistencies between Dr. Walker's opinion and the treating records. *See* 20 C.F.R. §§ 404.1527(c)(4), 416.927(c)(4) ("Generally, the more consistent a medical opinion is with the record as a whole, the more weight we will give to that medical opinion."). The ALJ noted that the "only positive findings on exam" were of decreased sensation and a mildly antalgic gait, which was nonetheless "safe and stable and of normal speed without use of any assistive device." R. 26; *see* R. 676. Additionally, several treatment records indicate that Plaintiff was ambulatory when he arrived for his appointments and that he demonstrated a normal gait and full (5/5) lower extremity strength. *See* R. 398, 425, 441, 459, 473, 481, 507, 523, 559, 612, 675, 676, 1001, 1006; *see also* R. 395 (describing Plaintiff as "[c]ompletely [a]ble" to perform daily living activities including walking and driving), 406 (stating Plaintiff is "[s]teady" and "[a]mbulatory without help"), 676 (noting that "[t]oe and heel walking are normal bilaterally").

The ALJ also noted the absence of "any specific limitations placed on the claimant by any doctor within the treating notes." R. 26. The medical records reveal that treatment prescribed during the relevant period included medications, wound dressings, prescription footwear, and diet, but did not include limitations regarding the amount of time Plaintiff could stand, walk, or work. *See, e.g.,* R. 904, 906, 908, 913-14, 996, 1048, 1058; *see also Jones v. Colvin*, 610 F. App'x 755, 758 (10th Cir. 2015) ("The lack of affirmative support in the medical record is a legitimate consideration at both steps of treating physician analysis"); 20 C.F.R. §§ 404.1527(c)(3), 416.927(c)(3) ("The more a medical source presents relevant evidence to support a medical opinion, particularly medical signs and

laboratory findings, the more weight we will give that medical opinion."); SSR 96-2p, 1996 WL 374188, at *2 (July 2, 1996) (noting that an adjudicator "cannot decide a case in reliance on a medical opinion" in the absence of "some reasonable support for the opinion").[3] Plaintiff has not shown that the challenged finding is not supported by substantial evidence. *See Trimiar v. Sullivan*, 966 F.2d 1326, 1329 (10th Cir. 1992) ("A finding of no substantial evidence will be found only where there is a conspicuous absence of credible choices or no contrary medical evidence." (internal quotation marks omitted)).

Plaintiff also criticizes the ALJ's reliance on Plaintiff's improved functioning—which coincided with his improved diabetic care—as a reason for affording Dr. Walker's opinion little weight. *See* Pl.'s Am. Br. at 17-18; R. 26. But the ALJ's observation that Plaintiff improved when he complied with a prescribed diet is supported by the record, including Dr. Walker's treatment notes and Plaintiff's testimony. *See* R. 48, 742-43, 808 (Dr. Walker noting that foot-ulcer wound was recurrent "due to lack of proper offloading and glycemic control") 1006-07, 1057-58; *Hackett v. Barnhart*, 395 F.3d 1168, 1174 (10th Cir. 2005) (finding that ALJ properly rejected treating physician's opinion because, among other things, the opinion was "not supported by [the treating physician's] own records which indicate[d] improvement and stabilization on medications"); *Thunderbull v. Barnhart*, 85 F. App'x 67, 69-70 (10th Cir. 2003) (finding that contradiction between treating physician's restrictive opinion and plaintiff's noncompliance with diet and blood-

---

[3] Social Security Ruling 96-2p has been rescinded for claims filed on or after March 27, 2017. *See* Rescission of Social Security Rulings 96-2p, 96-5p, and 06-3p, 82 Fed. Reg. 15263-01 (Mar. 27, 2017).

9

sugar monitoring was a "sufficiently specific and legitimate" reason for giving less-than-full weight to the opinion).

In sum, the ALJ provided legitimate reasons for discounting Dr. Walker's opinion, and those reasons are supported by substantial evidence in the record. *See* R. 26; 20 C.F.R. §§ 404.1527(c)(2), (4), 416.927(c)(2), (4).

II. THE ALJ'S DUTY TO SOLICIT ADDITIONAL EVIDENCE

In his challenge to the ALJ's treatment of Dr. Walker's opinion, Plaintiff also contends that the ALJ had a duty under 20 C.F.R. § 404.1520b (2016)[4] to address an alleged "ambiguity/deficiency/insufficiency" in Dr. Walker's opinion that Plaintiff could not walk "greater than 20 feet at one time." Pl.'s Am. Br. at 18-19; R. 26, 1086; *see also* 20 C.F.R. § 416.920b (2016). The ALJ found that Plaintiff's RFC "accommodate[d]" this opinion, noting that Dr. Walker had found that Plaintiff was restricted in the distance he could walk "at one time" and not "how much the claimant can stand or walk during a workday." R. 26; *see also* R. 41 (ALJ noting at hearing that "it's 20 feet at a time, not 20 feet in a workday" and that "[Plaintiff] might be walking 20 feet and then standing without walking and then walking 20 more feet").

To the extent that Plaintiff argues that Dr. Walker's opinion that Plaintiff can only walk 20 feet at a time is inconsistent with a RFC permitting Plaintiff to walk or stand in increments up to four hours, the point is unavailing. As discussed above, the ALJ gave Dr.

---

[4] The Court applies the version of this regulation "in effect at the time of the ALJ's decision," December 13, 2016. *Chapo v. Astrue*, 682 F.3d 1285, 1291 n.5 (10th Cir. 2012).

10

Walker's opinion little weight and provided legitimate and factually supported reasons for doing so.

As to whether the ALJ was required to obtain additional or clarifying evidence from Dr. Walker (or some other source), the Court finds that the ALJ did not err by failing to do so. Under 20 C.F.R. §§ 404.1520b and 416.920b, an ALJ must take steps to resolve an inconsistency or insufficiency of evidence only if (1) "the evidence is consistent" but the ALJ has "insufficient evidence to determine whether [the claimant is] disabled," or (2) if "after weighing the evidence," the ALJ determines he or she "cannot reach a conclusion" regarding whether the claimant is disabled. 20 C.F.R. §§ 404.1520b(c), § 416.920b(c); *see White v. Barnhart,* 287 F.3d 903, 908 (10th Cir. 2001) ("[I]t is not the rejection of the treating physician's opinion that triggers the duty to re-contact the physician; rather it is the inadequacy of the evidence the ALJ receives from the claimant's treating physician that triggers the duty." (alterations and internal quotation marks omitted)). Neither circumstance applies here. The ALJ did not find Dr. Walker's opinion incomplete, inadequate, or in need of clarification. Rather, the ALJ considered Dr. Walker's walking restriction and determined that there was sufficient evidence to weigh that opinion and assess Plaintiff's RFC. R. 26, 1086; *see* 20 C.F.R. §§ 404.1546, 416.946; SSR 96-5p, 1996 WL 374183, at *2, 4 (July 2, 1996);[5] *Chapo*, 682 F.3d at 1288 ("[T]here is no requirement in the regulations for a direct correspondence between an RFC finding and a specific

---

[5] Social Security Ruling 96-5p has been rescinded for claims filed on or after March 27, 2017. *See* Rescission of Social Security Rulings 96-2p, 96-5p, and 06-3p, 82 Fed. Reg. 15263-01 (Mar. 27, 2017).

11

medical opinion on the functional capacity in question. The ALJ, not a physician, is charged with determining a claimant's RFC from the medical record." (alteration and internal quotation marks omitted)). Because the ALJ was able to reach a conclusion regarding whether Plaintiff was disabled, he was under no duty to recontact Dr. Walker regarding her opinion or to solicit an opinion or evidence from another source.

III. THE ALJ'S CONSIDERATION OF PLAINTIFF'S SUBJECTIVE COMPLAINTS

Next, Plaintiff argues that the ALJ's RFC is flawed because the ALJ did not consider or discuss Plaintiff's positive work history when analyzing Plaintiff's subjective complaints. *See* Pl.'s Am. Br. at 19-21; Pl.'s Reply (Doc. No. 22) at 3-7. Plaintiff contends that the ALJ should have considered Plaintiff's work history in conjunction with other factors and evidence.[6] *See* 20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3) (2016) ("We will consider all of the evidence presented, including information about your prior work record . . . .").

In considering a claimant's subjective complaints of pain or other symptoms, an ALJ is required to consider all the relevant objective and subjective evidence and "decide whether he believes the claimant's assertions of severe pain." *Luna v. Bowen*, 834 F.2d

---

[6] Prior to issuance of the ALJ's decision, an ALJ's "credibility" evaluation was governed by Social Security Ruling 96-7p. The Commissioner has since issued Social Security Ruling 16-3p, which eliminated use of the term "credibility" and provided new guidance for evaluating the intensity, persistence, and limiting effects of a claimant's symptoms. *See* SSR 16-3p, 2017 WL 5180304, at *4 (eff. Oct. 25, 2017, to be applied to decisions made on or after Mar. 28, 2016). "[T]he factors to be considered under SSR 96-7p are the same as under SSR 16-3p," however. *Watts v. Berryhill*, 705 F. App'x 759, 763 (10th Cir. 2017).

12

161, 163 (10th Cir. 1987). The SSA has provided guidance on how it considers claimants' statements regarding their symptoms:

> Once the existence of a medically determinable impairment that could reasonably be expected to produce pain or other symptoms is established, we recognize that some individuals may experience symptoms differently and may be limited by symptoms to a greater or lesser extent than other individuals with the same medical impairments, the same objective medical evidence, and the same non-medical evidence. In considering the intensity, persistence, and limiting effects of an individual's symptoms, we examine the entire case record, including the objective medical evidence; an individual's statements about the intensity, persistence, and limiting effects of symptoms; statements and other information provided by medical sources and other persons; and any other relevant evidence in the individual's case record.

SSR 16-3p, 2017 WL 5180304, at *4.

"Credibility determinations are peculiarly the province of the finder of fact, and we will not upset such determinations when supported by substantial evidence." *Wilson v. Astrue*, 602 F.3d 1136, 1144 (10th Cir. 2010) (internal quotation marks omitted); *accord Watts*, 705 F. App'x at 763. But an ALJ's credibility finding "should be closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings." *Id.* (internal quotation marks omitted). In addition to objective evidence, the ALJ should consider certain factors in evaluating a claimant's credibility. SSR 16-3p, 2017 WL 5180304, at *7-8 (enumerating factors); *accord* 20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3); *Hamlin v. Barnhart*, 365 F.3d 1208, 1220 (10th Cir. 2004). An ALJ is not, however, required to make "a formalistic, factor-by-factor recitation of the evidence," but instead need only "set[ ] forth the specific evidence he relies on in evaluating the claimant's credibility." *Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1167 (10th Cir. 2012) (internal quotation marks omitted).

Here, the ALJ found that Plaintiff's statements regarding the limiting effects of his impairments were not entirely consistent with

> the medical history, the reports of the treating and examining practitioners, the findings made on examination, the degree of medical treatment required, discrepancies between the claimant's assertions and information contained in the documentary reports, descriptions of his activities and life style, and the claimant's demeanor at hearing.

R. 25. In reaching this determination, the ALJ discussed Plaintiff's testimony and the medical evidence. The ALJ noted that Plaintiff "testified that his activities of daily living are primarily sedentary in nature" but that Plaintiff stated in written Functional Reports that he can prepare simple meals, shop in stores, and go to doctor appointments. R. 25-26; *compare* R. 51-52, *with* R. 284-93, 306-14. And while Plaintiff testified he "cannot walk more than 20 feet at a time," medical providers had observed that Plaintiff's gait was "safe and stable and of normal speed." R. 26. The ALJ noted medical reports reflecting that Plaintiff was noncompliant with diet and exercise and "only occasionally [used] insulin and oral meds prior to hospitalization for abscess and cellulitis." R. 26 (internal quotation marks omitted). The ALJ further noted that although Plaintiff "complains of shoulder pain," "he has not attempted any treatment, conservative or otherwise, to address his complaints" and there were "no objective findings of shoulder limitation." R. 26.

In sum, the ALJ considered the appropriate factors in assessing Plaintiff's credibility, and his findings were closely and affirmatively linked to substantial evidence. *See* SSR 16-3p, 2017 WL 5180304, at *7-8 (identifying daily activities, medication, and other treatment as relevant factors in credibility determination); *Branum*, 385 F.3d at 1274 (affirming decision despite error in credibility determination where "the balance of the

14

ALJ's credibility analysis is supported by substantial evidence in the record"); *Keyes-Zachary*, 695 F.3d at 1167 ("[C]ommon sense, not technical perfection, is our guide."). Plaintiff has not shown that the ALJ's failure to discuss Plaintiff's positive work history undermined the ALJ's relevant findings in any material way.

IV. PLAINTIFF'S POSTHEARING OBJECTIONS TO VE TESTIMONY

On November 16, 2016, Plaintiff submitted to the ALJ a memorandum containing objections to the VE's testimony at the administrative hearing ("Posthearing Memo"). Specifically, Plaintiff objected to the VE's use of SkillTRAN's Job Browser Pro, a commercial software product, in her determination of the number of jobs existing in the state and national economies within the representative occupations she identified. R. 345-80 (Ex. 16E); *see* R. 58-61. In his brief before this Court, Plaintiff argues that the ALJ's failure to rule on these objections in the body of his written decision, or elsewhere, was a violation of his duty under section I-2-6-74(B) of the *Hearings, Appeals, and Litigation Law Manual* ("HALLEX")[7] and undermines his step-five conclusions. *See* Pl.'s Am. Br. at 6-11; *see also* Pl.'s Reply at 1-3.

As an initial matter, the Tenth Circuit has not determined whether HALLEX creates judicially enforceable rights. *See Lee v. Colvin*, 631 F. App'x 538, 543 & n.3 (10th Cir. 2015) (citing to Ninth Circuit rejection of argument that HALLEX imposes judicially enforceable duties); *accord Butterick v. Astrue*, 430 F. App'x 665, 668 (10th Cir. 2011).

---

[7] HALLEX is a set of internal guidelines promulgated by the SSA that "defines procedures for carrying out policy and provides guidance for processing and adjudicating claims at the hearing, Appeals Council, and civil action levels." *See* https://www.ssa.gov/OP_Home/hallex/I-01/I-1-0-1.html (Mar. 3, 2011).

15

Instead, when "[a]ssuming without deciding" that relief could be granted for HALLEX violations, the Tenth Circuit has stated that "only prejudicial violations of HALLEX provisions" would entitle a claimant to relief. *Lee*, 631 F. App'x at 543.

Following that framework, the Court finds that Plaintiff is not entitled to remand in this case because he has not shown that the ALJ violated HALLEX. Section I-2-6-74 addresses prehearing communications between the ALJ and a VE as well as questioning of a VE during an administrative hearing. *See* HALLEX § I-2-6-74, https://www.ssa.gov/OP_Home/hallex/I-02/I-2-6-74.html (last visited Sept. 17, 2018). The subsection on which Plaintiff relies states, in relevant part, that "[a]fter administering the oath or affirmation, the ALJ must (on the record) . . . [r]ule on any objection(s)" and that "[t]he ALJ may address the objection(s) on the record during the hearing, in narrative form as a separate exhibit, or in the body of his or her decision." *Id*. § I-2-6-74(B). Significantly, this provision falls under the subheading "Conduct of the Hearing." *Id.* Though district courts within the Tenth Circuit have not directly ruled on the applicability of HALLEX § I-2-6-74(B) to posthearing objections, the plain language of this subsection directs that an ALJ rule on objections to VE testimony raised on the record *during* the administrative hearing. At no point does section I-2-6-74 state that an ALJ must rule in writing on objections to VE testimony raised after the close of the hearing; nor can such a mandate fairly be attributed to it.[8] *See, e.g.*, *Horner v. Berryhill*, No. 17 C 4823, 2018 WL

---

[8] HALLEX I-2-5-57 and I-2-5-58 provide claimants the opportunity to submit written interrogatories to the VE after the hearing and require ALJs to rule on any objections claimants raise to the VE's response to the interrogatories. *See* HALLEX §§ I-2-5-57, I-2-5-58. Since Plaintiff's objections are not in response to posthearing interrogatories, these

1394038, at *2 (N.D. Ill. Mar. 20, 2018) ("Because HALLEX does not compel an ALJ to rule on objections to VE testimony posed *after* a hearing has ended, the ALJ's failure to do so in this case was not erroneous."); *Owens v. Berryhill*, No. 17-CV-4824, 2018 WL 3303274, at *2 (N.D. Ill. July 5, 2018); *Delmonaco v. Berryhill*, No. 1:17-cv-00345-AC, 2018 WL 1448558, at *5 (D. Or. Mar. 23, 2018); *see also Moffit v. Berryhill*, No. CIV-17-4015-JWL, 2018 WL 276770, at *4 (D. Kan. Jan. 3, 2018) (distinguishing current HALLEX section I-2-6-74 with former section I-2-5-55, which was effective September 28, 2005, through June 15, 2016).

Plaintiff points to *Haddock v. Apfel*, 196 F.3d 1084, 1090 n.2, 1091 (10th Cir. 1999), as support for his contention that the ALJ erred in not ruling on the posthearing objection to the VE's use of SkillTRAN's Job Browser Pro. *See* Pl.'s Am. Br. at 7, 8; Pl.'s Reply at 2. Plaintiff's reliance on this decision is misplaced. The Tenth Circuit in *Haddock* held that an ALJ "must investigate and elicit a reasonable explanation for any conflict between the Dictionary [of Occupational Titles]" and VE testimony. *Haddock*, 196 F.3d at 1090. The ALJ followed this directive at the hearing by twice soliciting testimony from the VE as to whether her conclusions conflicted with the DOT. *See* R. 58, 59. The Tenth Circuit in *Haddock* did not require that the same inquiry be made for other data sources and, in fact, stated that the responsibility to cross-examine a VE concerning reliance on "a publication not specifically listed in [20 C.F.R. § 404.1566(d)]" falls on the claimant. *Haddock*, 196 F.3d at 1090 n.2 ("The claimant's failure . . . to cross-examine the vocational

---

directives are inapplicable to Plaintiff's Posthearing Memo, and Plaintiff does not assert otherwise.

17

expert about her non-listed source publication made it impossible for this court to assess on appeal whether the VE's testimony was unreliable."); SSR 00-4p, 2000 WL 1898704, at *2, 4 (Dec. 4, 2000); 20 C.F.R. §§ 404.1566(d), 416.966(d); *see also Gay v. Sullivan*, 986 F.2d 1336, 1340 n.2 (10th Cir. 1993) ("We are not persuaded by plaintiff's contention that counsel could not adequately cross-examine the [VE] because her (published) data source was available only by subscription. Counsel could have probed the witness about the source's reliability and acceptance in the profession, but he did not do so, and now our assessment of such matters is effectively foreclosed."). Here, claimant's counsel could have cross-examined the VE as to whether the information obtained from SkillTRAN's Job Browser Pro was reliable and did not do so. Plaintiff has not shown that Tenth Circuit or other authority required the ALJ to expressly rule on a claimant's objection to the use of such a source when such objection is made after the hearing.

Accordingly, Plaintiff has not shown that the ALJ committed reversible error by failing to rule on the objections raised in Plaintiff's Posthearing Memo.

## CONCLUSION

The decision of the Commissioner is AFFIRMED. Judgment shall issue accordingly.

ENTERED this 18th day of September, 2018.

_____
CHARLES B. GOODWIN
United States District Judge